Kirk Pasich (SBN 94242)
KPasich@PasichLLP.com
PASICH LLP
10880 Wilshire Blvd., Suite 2000
Los Angeles, California 90024
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Jacquelyn M. Mohr (SBN 278337)
JMohr@PasichLLP.com
PASICH LLP
1230 Rosecrans Ave., Suite 690
Manhattan Beach, California 90266
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOSEGOW (HYPNOTIC) PRODUCTIONS INC., Plaintiff, vs. CHUBB NATIONAL INSURANCE COMPANY, Defendant. | Case No.  2:20-cv-08253 **COMPLAINT FOR:** BREACH OF CONTRACT; TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; FRAUD; NEGLIGENT MISREPRESENTATION; REFORMATION; AND DECLARATORY RELIEF **DEMAND FOR JURY TRIAL** |

Plaintiff Hoosegow (Hypnotic) Productions Inc. ("Hoosegow") hereby complains of defendant Chubb National Insurance Company ("Chubb National") and alleges as follows:

## NATURE OF THIS LAWSUIT

1.     Hoosegow is a motion picture production company set to produce the action picture *Hypnotic* starring Ben Affleck.  Consistent with long-established custom and practice in the motion picture and television industry, Hoosegow purchased a Film Producers Risk policy from Chubb National.  The purpose of such insurance is to protect the insured should events preclude or disrupt the production of a motion picture or television show.  Chubb National's long-established custom and practice is that if an insured production is delayed or disrupted, then the period of the policy is extended until such reasonable time as the production is completed.

2.     Consistent with this long-established custom and practice, Chubb National expressly represented in writing when selling the policy to Hoosegow that if production of *Hypnotic* were delayed, the policy period would be extended.  In reliance on this custom and practice and Chubb National's express representation, Hoosegow purchased the policy.

3.     Unfortunately for Hoosegow, when production of *Hypnotic* was delayed by insured risks associated with the COVID-19 pandemic, Chubb National refused to extend the policy.  Instead, Chubb National offered only to "renew" the policy with a material reduction in the scope of the insurance.  Specifically, Chubb National said that the policy would be "renewed" only with the addition of an exclusion applicable to losses relating to COVID-19, thereby depriving Hoosegow of coverage that it had purchased and that was promised under the existing policy. When Hoosegow reached out to Chubb National, pointing out the custom and practice and Chubb National's express representation, Chubb National refused to address Hoosegow's concerns and points or explain the basis for its position. Instead, it insisted that it would only talk with the insurance broker and then only about renewing the policy with a COVID-19-related exclusion.

4.     Hoosegow is informed and believes, and on that basis alleges, that Chubb National's position and treatment of Hoosegow is part of a pattern and

1  practice and methodical course of conduct in which Chubb National is engaged to
2  protect its financial interests at the expense of its insureds' interests and with
3  conscious disregard and disdain for the rights, interests, and reasonable expectations
4  of its insureds, including Hoosegow.

5       5.     Chubb National's conduct constitutes a breach of the insurance policy,
6  violates the implied covenant of good faith and fair dealing, and is fraudulent.  By
7  this lawsuit, Hoosegow seeks damages to compensate it for Chubb National's
8  breaches and wrongful conduct and punitive damages for Chubb National's bad
9  faith.  Hoosegow also seeks reformation of the policy, if necessary, and declaratory
10  relief confirming that the policy's expiration date will be extended pursuant to
11  Chubb National's custom and practice and express representations.

12  **JURISDICTION AND VENUE**

13       6.     The Court has subject matter jurisdiction to hear this case under 28
14  USC § 1332 based on complete diversity of citizenship between the parties and
15  because the amount in controversy, exclusive of costs and interest, exceeds $75,000.

16       7.     The Court has personal jurisdiction over Chubb National because
17  Chubb National does business in this District.

18       8.     Venue is proper in the Central District of California because a
19  substantial part of the events or omissions giving rise to Hoosegow's claims
20  occurred in this District, including negotiations regarding the Policy and the
21  issuance of the policy through the "Chubb Producing Office" located at 555 S.
22  Flower St., 3rd Floor, Los Angeles, CA 90071.

23  **THE PARTIES**

24       9.     Hoosegow is a corporation organized and existing under the laws of the
25  State of Delaware with its principal place of business in the State of California and
26  is authorized to conduct business in the State of California.

27       10.    Chubb National is part of the Chubb Group of Insurance Companies.
28  Chubb Limited is the ultimate parent of Chubb National and the other insurance

PASICH

companies that are part of the Chubb Group of Insurance Companies (for convenience, and as the Chubb companies do, Chubb National and the other Chubb companies hereafter collectively are referred to as "Chubb"). Chubb maintains a worldwide website at https://www.chubb.com/us-en/. Chubb makes various statements and representations on the Chubb website. According to the Chubb website, Chubb "is a global insurance and reinsurance company focusing exclusively on insurance business" and "is the world's largest publicly traded property and casualty insurer."[1] Chubb is also one of the largest providers of insurance to the entertainment industry.

11.     Chubb Limited is the ultimate parent company of Federal Insurance Company, which is, in turn, the parent company of Chubb National. Federal Insurance Company is incorporated under the laws of the State of Indiana with its principal place of business in the State of New Jersey.

12.     Chubb National is incorporated under the laws of the State of Indiana with its principal place of business in the State of New Jersey. Chubb National is licensed to transact, and transacts, business in the State of California and in this District.

13.     On its website, Chubb states:

How is Chubb different?

We don't just process claims, we make things right.

We hope you never need to file a claim with us. But if you

do, that's our opportunity to show you what

"craftsmanship" means in service to you. It means a quick

response when you need it most. It means Chubb people

working with empathy, integrity and our legendary

attention to detail to make you whole. It means we honor

---

[1] https://www.chubb.com/at-en/about-us/chubb-limited.aspx.

COMPLAINT

the promises we've made to you. Your loved ones, your employees, your home, your business reputation—these things matter. These things are personal, for you and for us.

We're here to help.[2]

14.    Chubb also represents to the public:

If being treated fairly and paid quickly are important to your clients when they have a loss, you want Chubb. When your clients insure with Chubb, they're buying **real** insurance.[3]

[*and*]

The insurance claims process can sometimes be, well, a process.  At Chubb, it's different.  That's because we're not just in the insurance business, we're in the people business.  Our experienced claims specialists are relentless about every detail in the most personal way possible.  Whether you have a business, homeowners or auto policy, it's our policy to make your life easier. . . .  If a solution is possible, we'll find a way to make it happen.[4]

15.    Chubb claims to specifically appreciate and understand that "[t]he risks faced by entertainment industry companies can be unique and vary widely.  Chubb offers customized coverage for property . . . to support your risk management strategy."[5]

16.    Chubb also states as follows on its website:

---

[2] https://www.chubb.com/us-en/claims/claims-difference.aspx.
[3] Chubb Ad, *Business Insurance,* at 11 (Apr. 4, 2008).
[4] https://www.chubb.com/us-en/claims/.
[5] https://www.chubb.com/us-en/business-insurance/entertainment.aspx.

1    Our hearts go out to those affected by the COVID-19

2    pandemic. We have been — and stand ready to continue

3    — supporting our clients, distribution partners and

4    communities.[6]

5    17.    Chubb also states:

6    **Doing our part**

7    Chubb takes pride in our continuing commitment to our

8    clients.

9    *Id.*

10    18.    Chubb echoed these sentiments in a news release in April, stating:

11    "We are committed to supporting people, business and

12    communities most impacted by this global crisis," said

13    Evan G. Greenberg, Chairman and Chief Executive

14    Officer.[7]

15    19.    Chubb repeatedly makes these representations, saying, as further

16    examples:

17    Chubb is there for our clients in good times and bad. [8]

18    [*and*]

19    The COVID-19 pandemic is one of the most disruptive

20    and unprecedented events to occur in modern times. . . .

21    During these unsettling times, we want to reinforce our

22    commitment to clients, agents and brokers.[9]

23

24

25    _____

[6] https://www.chubb.com/microsites/covid19-resource-center/index.aspx.

26    [7] https://news.na.chubb.com/2020-04-05-Chubb-Commits-10-Million-to-Pandemic-

27    Relief-Efforts-Globally-Company-Pledges-No-COVID-19-Layoffs.

[8] https://www.chubb.com/us-en/businesses/campaign/our-commitment.aspx.

28    [9] https://www.chubb.com/us-en/businesses/resources/safeguarding-your-business-employees-during-covid-19.aspx.

COMPLAINT

## THE CHUBB NATIONAL INSURANCE POLICY

20.     Chubb National issued Hoosegow a Film Producers Risk, Policy No. 7997-44-93 (the "Policy").  Hoosegow purchased the Policy for the purpose of providing coverage in the event that production of *Hypnotic* was delayed for a covered cause of loss.  Hoosegow purchased the Policy because it knew that, without the protection that it, it likely could not proceed with the project. A true and correct copy of the Policy is attached hereto as Exhibit A and incorporated herein by reference.

21.     The Policy provides $58,000,000 of Production Media coverage per occurrence, $58,000,000 of Media Perils coverage per occurrence, and $58,000,000 of Declared Person coverage per occurrence, in addition to other coverages.

22.     Under the Policy's Cast coverage form, Chubb National agrees to
> pay for the actual **production loss** you incur due to the
> inability of an **essential element** or other **declared person**
> to commence, continue or complete their duties or
> performances in an **insured production** as a result of a
> **covered cause of loss** . . . .

Policy, Form 10-02-1684 (Rev. 7-09) at 3.

23.     "Essential element" means any person "without whom the insured production can not be completed; and shown in the Cast Insurance Schedule . . ." *Id.* at 8.  "Declared person" means any individual on the Cast Insurance Schedule." *Id.* Ben Affleck and Robert Rodriguez fall within the Policy's definition of "essential element" and are included on the Policy's Cast Insurance Schedule.

24.     "Production loss" means any "additional production costs" incurred to complete the production "in essentially the same manner" as prior to a loss.  *Id.*, Form 10-02-1683 (Rev. 7-09), at 15.

25.     "Covered cause of loss" is defined, in relevant part, as, "death; injury; sickness; kidnap; or compulsion by physical force or threat of physical force." *Id.*,

Form 10-02-1684 (Rev. 7-09) at 3.  Therefore, under the Policy, Hoosegow has coverage in the event that Mr. Affleck, Mr. Rodriguez, or any "declared person" becomes sick or dies from COVID-19 and could not participate in the production of *Hypnotic* because their non-availability would be the result of a "covered cause of loss."

26.     The Policy lists a policy period of October 28, 2019, to October 28, 2020, with its expiration date stated as a matter of convenience only and with the express understanding that it could be extended as needed by Hoosegow.

27.     The Policy contains provisions referencing termination of coverage. These provisions are not plain, clear, conspicuous, or readily understandable, are conflicting, and are confusing.

28.     The Cast coverage form contains a provision stating that coverage ends when "the policy expires or is terminated," or upon "completion of the insured production," whichever first occurs. *Id.*, Form 10-02-1684 (Rev. 7-09) at 4.  In accord with Chubb National's express representations and custom and practice, this provision is reasonably understood to mean, and Hoosegow understood the Policy to mean, that the Policy would not expire on the stated expiration date if production were delayed, but instead would expire only upon completion of the production.

29.     The Property and Production Media coverage form includes an "Attachment and Determination Of Production Media Coverage" provision.  *Id.*, Form 10-02-1735 (Rev. 7-09), at 7.  That provision states, in relevant part, that the Production Media Coverage

> ends when the first of the following occurs:
>
> 1.     The date on which a protection copy has been completed and stored in an area physically separated from the original **production media**;
>
> 2.     30 days after completion of post-production;
>
> 3.     ***The expiration date shown in the Declarations***; or

1         4.     The policy is cancelled.

2 *Id.* (italics added).  The Policy does not include an expiration date in the

3 Declarations as to the Production Media Coverage.

4         30.    The Policy does not include a virus exclusion, pandemic exclusion,

5 COVID-19 exclusion, or any other similar exclusion.

6         31.    It has been Chubb's custom and practice with respect to motion picture

7 and television productions to extend the expiration dates of Film Producers Risk

8 production insurance policies when a production is delayed and not likely to be

9 completed before the policy's stated expiration date.  Specifically, rather than

10 issuing a new policy with a new policy period, the Film Producers Risk insurance

11 policy's referenced expiration date is extended without any material change or

12 reduction in coverage.  In fact, in accord with custom and practice, all policy terms,

13 conditions, and coverage limits remain unchanged.  Chubb National and other

14 Chubb insurance companies long have engaged in this custom and practice.

15         32.    As discussed in detail below, and in conformity with its custom and

16 practice, Chubb National expressly represented in selling the Policy that its

17 expiration date would be extended if need be.

18         33.    Therefore, consistent with Chubb National's custom and practice and

19 express representations, Hoosegow reasonably understood that if production of

20 *Hypnotic* were delayed, the Policy would not expire on its stated expiration date and

21 coverage would continue in force until such time as the production reasonably could

22 be completed, with Chubb National being obligated to pay the insured losses and

23 extra expense incurred in the delayed production.

24         34.    To the extent not waived or otherwise excused, Hoosegow has

25 complied with all terms and conditions precedent contained the Policy and is

26 entitled to all benefits of insurance by the Policy.

27

28

COMPLAINT

**CHUBB NATIONAL'S MISREPSENTATIONS AND BREACHES**

35.   *Hypnotic* is award-winning writer/producer/director Robert Rodriguez's large-budget action thriller starring Ben Affleck as a detective who, while investigating a string of high-end heists, becomes ensnared in a mystery involving his missing daughter and a secret government program.  *Hypnotic* was originally scheduled to commence principal photography in April 2020.

36.   As is common in the motion picture and television industry, as Hoosegow started to plan for the production, it sought to purchase insurance for *Hypnotic.*  In or about October 2019, Hoosegow's insurance broker, Arthur J. Gallagher Risk Management Services, Inc. ("Gallagher"), began negotiations with Chubb National to secure a Film Producers Risk insurance policy for *Hypnotic*—that is, a policy that would insure Hoosegow for losses arising from the inability of a production's cast and other insured persons to appear because of illness or injury, orders of civil authority, and imminent peril.

37.   Gallagher negotiated the terms and issuance of the Policy with Chubb National's designated and authorized representatives, including Jody Kelley, Underwriting Specialist for Chubb's Los Angeles Entertainment division. On October 30, 2019, Konrad Dowling of Gallagher stated in an e-mail to Ms. Kelley and Rose Lewis of Chubb National that Hoosegow wanted to "make the expiration date March 21, 2021, one year from the start of principal [photography]."  Thus, the request was for a policy period that would expire on March 21, 2021.

38.   Ms. Kelley and Chubb National suggested that the Policy's expiration date match the expiration dates of certain other policies that Chubb provided to Hoosegow.  Ms. Kelley and Chubb National expressly assured Hoosegow that it need not procure a policy stating a March 21, 2021, expiration date and that Hoosegow would not be prejudiced by accepting a stated earlier policy expiration date because that date would be extended if needed.  Specifically, in responding responded to Gallagher's October 30, 2019, e-mail, Ms. Kelley stated:

1    I think if [*sic*] might be better if we issue [the] policy with

2    the same annual expiration dates as the casualty lines?

3    That way we will have consecutive expiration dates for all

4    lines ***and can extend as needed***.

5    (emphasis added).

6    39.    Based on longstanding custom and practice of extending the expiration

7    dates of policies when necessary for production delays, and Chubb National's

8    express representation that the Policy's expiration date would be "extend[ed] as

9    needed," Hoosegow agreed to accept the Policy with a stated policy expiration date

10   of October 28, 2020.

11   40.    Hoosegow is informed and believes, and on that basis alleges, that at

12   the time that Chubb National sold Hoosegow its Policy, Chubb National knew, and

13   should have known, that Hoosegow was relying on Chubb National's

14   representations, and its custom and practice, that the Policy's expiration date would

15   be extended if principal photography was delayed and not completed by October 28,

16   2020.

17   41.    In December 2019, SARS-CoV-2 and COVID-19 broke out in Wuhan,

18   China.  Since then, SARS-CoV-2 and COVID-19 have spread throughout the world,

19   prompting the World Health Organization to declare a global pandemic.

20   42.    Since January 1, 2020, there have been more than 21,294,000

21   confirmed cases of COVID-19 throughout the world, more than 761,750 of which

22   have resulted in deaths as of the date of filing of this Complaint.[10]  There have been

23   more than 6,000,000 confirmed cases of COVID-19 in the United States, more than

24   180,000 of which have resulted in deaths.[11]  Moreover, due in part to the initial

25

26   [10] *See* https://www.who.int/docs/default-source/coronaviruse/situation-
27   reports/20200816-covid-19-sitrep-209.pdf?sfvrsn=5dde1ca2_2.
28   [11] *See* https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last
     visited Sept. 1, 2020).

1  absence of available tests, it is believed that the true number of coronavirus cases is

2  significantly higher than the reported numbers might suggest.[12]

3      43.    In March 2020, in response to the pandemic and the worldwide spread

4  of SARS-CoV-2, civil authorities throughout the United States began issuing "stay

5  home" and "shelter in place" quarantine orders and requiring the suspension of non-

6  essential business operations.

7      44.    As non-essential businesses, the entertainment industry was hit

8  particularly hard.[13]  By the end of March nearly all media productions were forced

9  to shut down and suspend operations indefinitely.[14]

10      45.    Hoosegow's production of *Hypnotic* was directly impacted by these

11  events and was among the hundreds of productions forced to postpone or shut down.

12  Specifically, in direct response to these nationwide orders, Hoosegow was forced to

13  postpone commencement of its April 2020 production date.

14      46.    In light of these events, and because Hoosegow's ability to proceed

15  with the production of *Hypnotic* depends upon having the insurance in place through

16  completion of the production, Gallagher asked Chubb National to confirm that the

17  Policy's stated expiration date would be extended, as Chubb National had

18  represented it would be in inducing Hoosegow to accept the Policy with its

19  referenced earlier expiration date.  Chubb National ignored Gallagher's request for

20  two months.  When Chubb National finally responded, it categorically refused to

21  extend the Policy's expiration date and refused to honor its earlier representations

22  and promises and its long-established custom and practice.  It stated that this was 'a

23  global Chubb position" after the shutdowns of productions had begun.

24

25

---

[12] *See* https://www.nbcnews.com/health/_health-news/how-many-people-have-had-coronavirus-no-symptoms-n1187681.

[13] https://www.cnbc.com/2020/04/24/hollywoods-small-businesses-in-crisis.html.

[14] https://www.theguardian.com/film/2020/mar/19/loss-of-jobs-income-film-industry-hollywood-coronavirus-pandemic-covid-19.

47.     Hoosegow is informed and believes, and on that basis alleges, that when Chubb National took this position, it knew that because of the pandemic, Hoosegow would not be able to procure replacement insurance without a COVID-19 exclusion and likely would not be able to proceed with the production, causing Hoosegow to lose funds it had invested and committed to pay in connection with *Hypnotic*.  Notwithstanding this fact and requests from Gallagher that it honor its promises, Chubb National refused to do more than offer a renewal policy with an exclusion for losses associated with COVID-19 and the pandemic.

48.     On July 30, 2020, Hoosegow's counsel sent a letter to Ms. Kelley, explaining why Chubb National should honor its agreement to extend the Policy's stated expiration date and asking Chubb National reconsider its coverage position.

49.     Ms. Kelley did not respond.  Instead, the response came on August 14, 2020, from Matthew Campbell of Chubb's North America Office of General Counsel in New Jersey.  The response did not address the substance of Hoosegow's letter, instead saying that "Chubb has contacted AJ Gallagher, the producer of record for the above-captioned policy, and communicated its intentions regarding the upcoming renewal of that policy."

50.     On August 17, 2020, Hoosegow's counsel responded to Mr. Campbell, stating:

> We did not write about the renewal of the policy.  As we explained in detail in our July 30, 2020, letter, Chubb is obligated to extend the policy period (and to pay for Hoosegow's reasonable mitigation and loss prevention costs, and to pay for abandonment, should Hoosegow need to abandon the production).  The fact that you have talked to Arthur J. Gallagher, the broker, about renewal is simply not responsive to our points.
>
> However, if you did speak to Arthur J. Gallagher,

13

hopefully they reminded you that Chubb's position that it will not extend is contrary to the parties' course of dealings and decades of custom and practice.

It also is contrary to an express representation by Ms. Kelley.   When discussing the policy period, she stated as follows to Konrad Dowling at Arthur J. Gallagher:

> [A]s we haven't yet quoted and formally bound the casualty lines, I think if might be better if we issue a FPR policy with the same annual expiration dates as the casualty lines?
>
> That way we will have consecutive expiration dates for all lines and ***can extend as needed.***

Oct. 30, 2019, E-Mail, Jody Kelley to Konrad Dowling (emphasis added).

Please respond to our letter.  Please also note that Chubb's failure to respond promptly and its failure to honor its obligations may result in the collapse of this project.  Hoosegow will hold Chubb fully accountable for all prejudice and damages it suffers because of Chubb's breaches.  Meanwhile, Hoosegow continues to reserve all rights.

51.    Mr. Campbell responded on behalf of Chubb National that same day. However, he ignored the statement of Hoosegow's counsel that Hoosegow was not seeking to address the renewal, but rather Chubb National's refusal to honor its express representation that the Policy's expiration date would be "extend[ed]a s needed."  Instead, Mr. Campbell mischaracterized Hoosegow's request, stating:

In your letter, you requested that Chubb convey its intentions with regard to Hoosegow Productions and the upcoming renewal, which we have done.  We have responded to your letter and do not believe further dialogue is required with your firm. We will continue to work with the producer of record (AJG) on the upcoming renewal.

Thus, not only did Chubb National wrongfully refuse to reconsider its position, it refused to give any substantive explanation for its position or otherwise engage in a dialogue with its insured.  In so doing, Chubb National breached its duty of good faith and its obligation to fairly handle all claims under the Policy.

52.     Instead of extending the Policy's expiration date, Chubb National has refused to do anything other than offer to renew the Policy with the addition of an exclusion for losses associated with COVID-19.  In refusing to extend the Policy's expiration date and instead only offering to renew with the addition of such restrictive terms, Chubb National is depriving Hoosegow of the coverage that Chubb National promised and agreed to provide in the Policy.  Furthermore, Chubb National knows, as one of the largest providers of Film Producers Risk insurance to the entertainment industry, that by adopting this position, it would leave Hoosegow no reasonable options to obtain replacement insurance on the same terms and conditions as Chubb National has agreed to provide in selling the Policy.

53.     Hoosegow is informed and believes, and on that basis alleges, that Chubb National has adopted the same stance with its other insureds that purchased Film Producers Risk Insurance—that is, that Chubb National has refused, and is refusing, to extend policy expirations dates under Film Producers Risk insurance policies beyond the policy's stated expiration date and is doing so as to motion picture and television productions across the entertainment industry as a whole since the pandemic began.  Hoosegow is informed and believes, and on that basis alleges,

COMPLAINT

1  that Chubb National has engaged, and is engaging, in this pattern and practice of

2  conduct as part of a broad scheme to save itself tens of millions of dollars (or more),

3  in conscious disregard of its insureds' known rights, thereby systematically and

4  categorically depriving its insureds, like Hoosegow, of insurance to which they are

5  entitled.  This coordinated scheme to wrongfully withhold policy benefits is in direct

6  conflict with Chubb and Chubb National's custom and practices, Chubb National's

7  representations, and the reasonable expectations of Hoosegow and Chubb National's

8  other insureds.

9        54.    Hoosegow is unable to reasonably obtain a comparable insurance

10  policy at a similar premium for *Hypnotic* without an exclusion for losses associated

11  with COVID-19, viruses, and the pandemic.

12        55.    Chubb National knew, or should have known, that Hoosegow only

13  accepted the notion of a policy expiration date of October 28, 2020, because of

14  Chubb National's and Chubb Limited's express and implied representation that the

15  Policy's expiration date could be extended "as needed."

16        56.    As a direct result of Chubb National's express and implied

17  misrepresentations and breaches, Hoosegow has suffered and will continue to suffer

18  damages.

19                    **FIRST CAUSE OF ACTION**

20                        **(Breach of Contract)**

21        57.    Hoosegow realleges and incorporates by reference herein each

22  allegation contained in paragraphs 1 through 56 above.

23        58.    Chubb National had and has a duty under the Policy, the law, and

24  industry custom and practice to extend the Policy's expiration date if principal

25  photography is delayed.

26        59.    Chubb National breached its duties under the Policy, by among other

27  things, refusing to extend the Policy's expiration date as it represented it would.

28

PASICH

**PASICH**

60.    As a direct and proximate result of Chubb National's breaches, Hoosegow has sustained, and will continue to sustain, substantial damages for which Chubb National is liable, in an amount to be established at trial.  Hoosegow will seek leave to amend this Complaint once it ascertains the full extent of its damages.

## SECOND CAUSE OF ACTION

### (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)

61.    Hoosegow realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 56, 58, and 59 above.

62.    Implied in the Policy is a covenant that Chubb National would act in good faith and deal fairly with Hoosegow, that Chubb National would do nothing to interfere with the rights of Hoosegow to receive benefits due under the Policy, and that Chubb National would give at least the same level of consideration to Hoosegow's interests as it gave to its own interests.

63.    Chubb National also had a duty under the Policy, the law, and insurance industry custom, practice, and standards to conduct a prompt and thorough investigation including all of the bases that might support Hoosegow's claim for coverage, before asserting coverage defenses or denying coverage.

64.    Instead of complying with these duties, Chubb National acted in bad faith, by among other things,

        a)    failing to promptly conduct a full and thorough investigation of Hoosegow's request for a Policy extension;

        b)    failing to fully inquire into possible bases that might support a coverage extension;

        c)    failing to comply with its custom and practice and without warning Hoosegow when selling the Policy that it would not honor its custom and practice;

        d)    refusing to engage in substantive communications with

Hoosegow regarding the terms of the Policy;

e)    failing to respond to coverage requests under the Policy in a timely manner;

f)    refusing to articulate grounds for its refusal to extend the policy period;

g)    limiting coverage to Hoosegow without a legitimate basis;

h)    taking positions through its conduct that it knows are not supported by, and in fact are contrary to, its express representations and its custom and practice;

i)    unreasonably failing and refusing to honor its promises and representations;

j)    putting its interests above that of its insured; and

k)    otherwise acting as alleged above.

65.    In breach of the implied covenant of good faith and fair dealing, Chubb National did the things and committed the acts alleged above for the purpose of consciously withholding from Hoosegow the rights and benefits to which it is and was entitled under the Policy.

66.    Chubb National's acts are inconsistent with the reasonable expectations of Hoosegow, are contrary to established insurance industry custom and practice, are contrary its express representations, are contrary to the express and implied terms of the Policies, and constitute bad faith.

67.    As a direct and proximate result of Chubb National's breach of the implied covenant of good faith and fair dealing, Hoosegow has sustained, and continues to sustain, damages, in an amount to be proven at trial.  Also, pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Hoosegow is entitled to recover all attorneys' fees that it has reasonably incurred, and continues to incur, in its efforts to obtain the benefits due under the Policy that Chubb National wrongfully has withheld, and is withholding, in bad faith.  Hoosegow also is entitled to interest

PASICH

thereon at the maximum legal rate.  Hoosegow continues to suffer damages because of Chubb National's bad faith and will seek leave to amend this Complaint once it ascertains the full extent of its damages.

68.    Hoosegow is informed and believes, and on that basis alleges, that Chubb National—acting through one or more of its officers, directors, or other corporate employees with substantial independent and discretionary authority over significant aspects of Chubb National's business—performed, authorized, and/or ratified the bad faith conduct alleged above.

69.    Chubb National's conduct is despicable and has been done with a conscious disregard of Hoosegow's rights, constituting oppression, fraud, and/or malice.  Chubb National has engaged in a series of acts designed to deny Hoosegow the benefits due under the Policy.  Specifically, Chubb National, by acting as alleged above, consciously disregarded Hoosegow's rights and forced Hoosegow to incur substantial financial losses, thereby inflicting substantial financial damage.  Chubb National ignored Hoosegow's interests and concerns with the requisite intent to injure within the meaning of California Civil Code section 3294.  Therefore, Hoosegow is entitled to recover punitive damages from Chubb National in an amount sufficient to punish and to make an example of Chubb National and to deter similar conduct in the future.

### THIRD CAUSE OF ACTION

### (Fraud – Promise Made without Intent to Perform)

70.    Hoosegow realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 56, 58, 59, and 62 through 66 above.

71.    In selling the Policy, Chubb National expressly and impliedly represented to Hoosegow that the Policy's expiration date would be extended if production of *Hypnotic* were delayed.  At no time during the discussions leading to Hoosegow's purchase of the Policy did Ms. Kelley or any other representative of Chubb National ever disclose that despite these clear representations, Chubb

National believed and later would contend that it had no obligation to extend the Policy's expiration date.  Moreover, Hoosegow is informed and believes, and on that basis alleges, that by representing that the Policy's expiration date could be extended "as needed," Chubb National represented, implied, and led Hoosegow to reasonably believe that Chubb National would treat the Policy's stated expiration date as one that could be extended as needed, and that Hoosegow should rely upon these representations.

72.    Hoosegow is informed and believes, and on that basis alleges, that at the time that Chubb National made these promises and representations, these promises and representations were false.

73.    Hoosegow is informed and believes, and on that basis alleges, that at the time that Chubb National made these promises and representations, Chubb National  did not intend to honor its representations or perform these promises and intended not to extend the policy period if it decided, for any reason, that it did not want to do so.

74.    Hoosegow is informed and believes, and on that basis alleges, that at the time that Chubb National made these promises and representations, Chubb National intended Hoosegow to rely upon them in agreeing to purchase the Policy. Chubb National knew that Hoosegow did not want a policy that would expire in October 2020 and wanted a policy that would cover the production of *Hypnotic* if that production were delayed.  Hoosegow is informed and believes, and on that basis alleges, that Chubb National knew that, but for these promises and representations, Hoosegow would not have purchased the Policy.

75.    At the time Chubb National made these representations and promises, Hoosegow was ignorant of Chubb National secret intention not to perform. Hoosegow could not, in the exercise of reasonable diligence, have discovered the Chubb National secret intention.  Instead, in reliance on Chubb National representations and promises, Hoosegow purchased the Policy and did not purchase

COMPLAINT

alternative coverage that was available in the marketplace at that time that would have protected it in the event of delays in production.  Had Ms. Kelley not expressly represented that the Policy's expiration date could be extended "as needed" and had Hoosegow known of Chubb National's actual intentions, Hoosegow would not have purchased the Policy and would have purchased insurance elsewhere.

76.     Hoosegow's reliance on Chubb National's promises and representations was reasonable based on, among other things, Chubb National's express representations that the Policy's expiration date could be "extend[ed] as needed," the prior relationship between Chubb National and Gallagher, Chubb National's deep and long-established knowledge of the need of studios and other producers to extend the expiration dates of Film Producers Risk insurance policies when productions are delayed, and Chubb National's custom and practice of extending the expiration dates of Film Producers Risk insurance policies when there are delays in production, and Chubb National's position as one of the largest providers of Film Producers Risk insurance policies and its obligations to treat insureds fairly and act in good faith towards its insureds.

77.     Chubb National failed to abide by its representations and promises and, contrary to those representations and promises, refused to honor Hoosegow's request to extend the Policy's expiration date.

78.     As a direct and proximate result of Chubb National's acts, Hoosegow has been damaged because it cannot obtain Film Producers Risk insurance at the same premium rate and/or without a COVID-19 exclusion and to the extent that, because of Chubb National's conduct, it is unable to proceed with the production of *Hypnotic*.  Hoosegow has been further been damaged in the amounts of the premiums it paid to Chubb National, plus interest on these amounts. Hoosegow will seek leave to amend this Complaint once it ascertains the full extent of its damages.

79.     Chubb National's conduct constitutes oppression, fraud, and/or malice. Chubb National engaged in a series of acts designed to deny the benefits due under

the Policy and that Chubb National promised and represented, and to conceal and/or mispresent material facts.

80.    Hoosegow is informed and believes, and on that basis alleges, that Chubb National—acting through one or more of its officers, directors, or other corporate employees with substantial independent and discretionary authority over significant aspects of Chubb National's business—performed, authorized, and/or ratified the bad faith conduct alleged above.

81.    Chubb National's conduct is despicable and has been done with a conscious disregard of Hoosegow's rights, constituting oppression, fraud, and/or malice.  Chubb National has engaged in a series of acts designed to deny Hoosegow the benefits due under the Policy.  Specifically, Chubb National, by acting as alleged above, consciously disregarded Hoosegow's rights and forced Hoosegow to incur substantial financial losses, thereby inflicting substantial financial damage.  Chubb National ignored Hoosegow's interests and concerns with the requisite intent to injure within the meaning of California Civil Code section 3294.  Therefore, Hoosegow is entitled to recover punitive damages from Chubb National in an amount sufficient to punish and to make an example of Chubb National and to deter similar conduct in the future.

## FOURTH CAUSE OF ACTION

### (Fraud in the Inducement)

82.    Hoosegow realleges and incorporates by reference herein each allegation contained in 1 through 56, 58, 59, 62 through 66, and 71 through 74 above.

83.    In negotiating and selling the Policy, Chubb National expressly and impliedly represented to Hoosegow that the Policy's expiration date would be extended if Hoosegow requested an extension because the production of *Hypnotic* had been delayed.  At no time during the discussions leading to Hoosegow's purchase of the Policy did Ms. Kelley or any other representative of Chubb National

22

ever disclose that despite these clear representations, Chubb National believed and later would contend that it had no obligation to extend the Policy's expiration date. Moreover, Hoosegow is informed and believe, and on that basis alleges, that by representing that the Policy's expiration date could be extended "as needed," Chubb National represented, implied, and led Hoosegow to reasonably believe that Chubb National would treat the Policy's stated expiration date as one that could be extended as needed, and that Hoosegow should rely upon these representations.

84.    Hoosegow is informed and believes, and on that basis alleges, that Chubb National represented that the Policy's expiration date could be extended "as needed" and did not disclaim its past custom and practice in order to induce Hoosegow to purchase the Policy with a referenced expiration date of October 28, 2020.

85.    Hoosegow is informed and believes, and on that basis alleges, that at the time that Chubb made these promises and representations, Chubb National knew they were false and that it had no intention to extend the Policy's expiration date if it decided for any reason that it did not want to do so.

86.    Hoosegow is informed and believes, and on that basis alleges, that at the time that Chubb National made these promises and representations, Chubb National intended Hoosegow to rely upon them in agreeing to purchase the Policy. Chubb National knew that Hoosegow did not want a policy that would expire in October 2020 and wanted a policy that would cover the production of *Hypnotic* if the production were delayed.  Chubb National induced Hoosegow to purchase the Policy with the referenced expiration date of October 28, 2020, through Ms. Kelley's express written representation that Hoosegow could extend the policy period "as needed."  Hoosegow is informed and believes, and on that basis alleges, that Chubb National knew that, but for these promises and representations, Hoosegow would not have purchased the Policy.

87.    At the time Chubb National made these representations and promises, Hoosegow was ignorant of Chubb National secret intention not to perform. Hoosegow could not, in the exercise of reasonable diligence, have discovered the Chubb National's secret intention.  Instead, in reliance on Chubb National's representations and promises, Hoosegow purchased the Policy and did not purchase alternative coverage that was available in the marketplace at that time that would have protected it in the event of delays in production.  Had Ms. Kelley not expressly represented that the Policy's expiration date could be extended "as needed" and had Hoosegow known of Chubb National's actual intentions, Hoosegow would not have purchased the Policy and would have purchased insurance elsewhere.

88.    Hoosegow's reliance on Chubb National's promises and representations was reasonable based on, among other things, Chubb National's express representations that the Policy's expiration date could be "extend[ed] as needed," the prior relationship between Chubb National and Gallagher, Chubb National's deep and long-established knowledge of the need of studios and other producers to extend the expiration dates of Film Producers Risk insurance policies when productions are delayed, and Chubb National's custom and practice of extending the expiration dates of Film Producers Risk insurance policies when there are delays in production, and Chubb National's position as one of the largest providers of Film Producers Risk insurance policies and its obligations to treat insureds fairly and act in good faith towards its insureds.

89.    Chubb National failed to abide by its representations and promises and, contrary to those representations and promises, refused to honor Hoosegow's request to extend the Policy.

90.    As a direct and proximate result of Chubb National's acts, Hoosegow has been damaged because it cannot obtain Film Producers Risk insurance at the same premium rate and/or without a COVID-19 exclusion and to the extent that, because of Chubb National's conduct, it is unable to proceed with the production of

*Hypnotic*.  Hoosegow has been further damaged in the amounts of the premiums it paid to Chubb National, plus interest on these amounts.

91.    Chubb National's conduct constitutes oppression, fraud, and/or malice. Chubb National engaged in a series of acts designed to deny the benefits due under the Policy and that Chubb National promised and represented, and to conceal and/or mispresent material facts.

92.    Hoosegow is informed and believes, and on that basis alleges, that Chubb National—acting through one or more of its officers, directors, or other corporate employees with substantial independent and discretionary authority over significant aspects of Chubb National's business—performed, authorized, and/or ratified the bad faith conduct alleged above.

93.    Chubb National's conduct is despicable and has been done with a conscious disregard of Hoosegow's rights, constituting oppression, fraud, and/or malice.  Chubb National has engaged in a series of acts designed to deny Hoosegow the benefits due under the Policy.  Specifically, Chubb National, by acting as alleged above, consciously disregarded Hoosegow's rights and forced Hoosegow to incur substantial financial losses, thereby inflicting substantial financial damage.  Chubb National ignored Hoosegow's interests and concerns with the requisite intent to injure within the meaning of California Civil Code section 3294.  Therefore, Hoosegow is entitled to recover punitive damages from Chubb National in an amount sufficient to punish and to make an example of Chubb National and to deter similar conduct in the future.

## FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

94.    Hoosegow realleges and incorporates by reference herein paragraphs 1 through 56, 58, 59, 62 through 66, 71 through 74, and 83 through 86 above.

95.    Chubb National represented in an attempt to sell the Policy to Hoosegow that Hoosegow "can extend as needed" the Policy's expiration date.  At

no time during the discussions leading to Hoosegow's purchase of the Policy did Ms. Kelly or any other representation of Chubb National ever disclose that despite these clear representations, Chubb National believed and later would contend that it had no obligation to extend the Policy's expiration date.  Moreover, Hoosegow is informed and believe, and on that basis alleges, that by representing that the Policy's expiration date could be extended "as needed," Chubb National represented, implied, and led Hoosegow to reasonably believe that Chubb National would treat the Policy's stated  expiration date as one that could be extended as needed, and that Hoosegow should rely upon these representations.

96.    If Chubb National's subsequent claim that it has no obligation to extend the Policy's expiration date is correct, then the representations Chubb National made in selling the Policy were, in fact, false, and were known by Chubb National to be false and to be with no reasonable grounds for believing them to be true.  The true facts were, at least if  Chubb National's statements in and July 2020 are to be believed, that Chubb National did not intend to extend the Policy's expiration date "as needed," and, in fact, intended the contrary—that is, that it not be obligated to extend the Policy's expiration date as Hoosegow might need.  If Chubb National's current claim that it has no obligation to extend the Policy's expiration date is true, then Chubb National's misrepresented the true nature and characteristics of the Policy and its agreement.

97.    Chubb National wrongfully failed to disclose the true nature and characteristics of the Policy and failed to disclose other information, such as its apparent intent not to honor its promise that the Policy's expiration date could be extended "as needed."

98.    Hoosegow is informed and believe, and based thereon allege, that Chubb National made these representations with the intent to induce Hoosegow to act in the manner alleged.

99.    At the time Chubb National made these representations, and at the time Hoosegow took the actions alleged, Hoosegow was ignorant of the falsity of Chubb National's representations and believed them to be true.  In reliance on these representations, Hoosegow was induced to, and did, purchase the Policy, pay the premium, forego the opportunity to purchase other insurance, and proceed with their plans to produce *Hypnotic* with the understanding and expectation that Chubb National would extend the Policy's expiration date if Hoosegow needed it to do so. Had Hoosegow known the actual facts, Hoosegow would not have taken these actions.

100.   Hoosegow's reliance on Chubb National's representations was justified because of Chubb National's superior knowledge and expertise in insurance, the prior relationship between Chubb National and Gallagher, and Chubb National's deep and long-established knowledge of the need of studios and other producers to have policy periods extended when productions are delayed, a need that Chubb National customarily recognized and satisfied by extending policy expiration dates in such circumstances.

101.   As a direct and proximate result of Chubb National's conduct, Hoosegow has been damaged in an amount in excess of the Court's jurisdictional limits.  The actual amount of damages has not yet been precisely ascertained.  When the precise amount of Hoosegow's damages is known, it will seek leave to amend this complaint.

## SIXTH CAUSE OF ACTION

### (Reformation of Written Instrument Based on Fraud)

102.   Hoosegow realleges and incorporates by reference herein paragraphs 1 through 56, 58, 59, 62 through 66, 71 through 74, 83 through 86, and 95 through 97 above.

103.   If and to the extent that the Policy does not permit Hoosegow to extend the Policy's expiration date when there is a delay in production, the Policy does not

1    reflect the true intent of the parties.  This result is from Chubb National's false

2    representations that the Policy's expiration date could be extended "as needed." The

3    parties' true agreement is that the Policy does, in fact, permit Hoosegow to extend

4    the Policy's expiration date as needed.

5         104.   Without knowledge of the true facts and in reliance on Chubb

6    National's false representations, Hoosegow was deceived and misled into accepting

7    the Policy to the extent that it differs materially from the prior oral and written

8    understanding of the parties that the Policy's expiration date could be extended "as

9    needed."  Hoosegow's reliance on Chubb National's false representations that the

10   Policy would honor and conform to the parties' intended agreement was reasonable

11   and justified in that Chubb National represented that the Policy permits the

12   extension of its expiration date "as needed." Chubb National knew that the ability to

13   extend the Policy's expiration date was important to enable Hoosegow to proceed

14   with the production of *Hypnotic* and to protect Hoosegow from losses should the

15   production be delayed or disrupted by insured risks.  Chubb National never advised

16   in the process of negotiating or issuing the Policy that it would not permit

17   Hoosegow to extend the Policy's expiration date if Hoosegow needed to do so, even

18   though the right to such extensions was commonplace in the insurance market at

19   that time.

20        105.   Therefore, if, and to the extent that, Chubb National's present

21   contention that the Policy, as written, does not provide Hoosegow with the right to

22   extend the expiration date "as needed" is correct, then the Policy should be reformed

23   to provide for such a right and, to the extent necessary, to delete any language in the

24   Policy that Chubb National contends limits Hoosegow's right to do so.

25

26

27

28

**SEVENTH CAUSE OF ACTION**

**(Reformation of Written Instrument Based on Mistake)**

106.    Hoosegow realleges and incorporates by reference paragraphs 1 through 56, 58, 59, 62 through 66, 71 through 74, 83 through 86, 95 through 97, 103, and 104 above.

107.    If and to the extent that the Policy does not permit Hoosegow to extend the Policy's expiration date when there is a delay in production, the Policy does not reflect the true intent of the parties.  This result is from Chubb National's false representations that the Policy's expiration date could be extended "as needed." The parties' true agreement is that the Policy does, in fact, permit Hoosegow to extend the Policy's expiration date as needed.  If and to the extent that the Chubb National policy does not contain a severability provision, the Chubb National policy does not reflect the true intent of the parties.  This result is based on the mutual mistake of the parties that the Policy would permit Hoosegow to extend the Policy's expiration date "as needed."  The parties' true agreement is that the Policy does, in fact, permit Hoosegow to extend the Policy's expiration date as needed.

108.    Therefore, if, and to the extent that, Chubb National's present contention that the Policy, as written, does not provide Hoosegow with the right to extend the expiration date "as needed" is correct, then the Policy should be reformed to provide for such a right and, to the extent necessary, to delete any language in the Policy that Chubb National contends limits Hoosegow's right to do.

**EIGHTH CAUSE OF ACTION**

**(Declaratory Relief)**

109.    Hoosegow realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 56, 58, 59, and 62 through 66 above.

110.    Hoosegow contends it is entitled to have the Policy's expiration date extended in accord with Chubb National's custom and practice and Chubb National's express and implied representations.  Chubb National disputes

COMPLAINT

1  Hoosegow's contention and asserts that it has no obligation to extend the Policy's

2  expiration date, but instead can substantially reduce Hoosegow's insurance

3  protection by offering a renewal policy that contains an expansive COVID-19

4  exclusion.  Therefore, an actual and justiciable controversy exists between

5  Hoosegow and Chubb National concerning the matters alleged herein.

6      111.  Hoosegow seeks a judicial declaration in accord with its contentions

7  and rejecting Chubb National's contentions, confirming that Hoosegow's

8  contentions, as stated above, are correct.

9      112.  A declaration is necessary at this time in order that the parties' dispute

10  may be resolved and that they may be aware of their respective rights and duties.

11  **<u>PRAYER</u>**

12  WHEREFORE, Hoosegow prays for judgment as follows:

13  **<u>ON THE FIRST CAUSE OF ACTION</u>**

14  1.    For damages, plus interest, according to proof at the time of trial;

15  **<u>ON THE SECOND CAUSE OF ACTION</u>**

16  2.    For damages, including reasonable attorneys' fees, plus interest,

17  according to proof at the time of trial;

18  3.    For punitive damages in an amount to be determined at the time of trial;

19  **<u>ON THE THIRD CAUSE OF ACTION</u>**

20  4.    For damages, plus interest, according to proof at the time of trial;

21  5.    For punitive damages in an amount to be determined at the time of trial;

22  **<u>ON THE FOURTH CAUSE OF ACTION</u>**

23  6.    For damages, plus interest, according to proof at the time of trial;

24  7.    For punitive damages in an amount to be determined at the time of trial;

25  **<u>ON THE FIFTH CAUSE OF ACTION</u>**

26  8.    For damages, plus interest, according to proof at the time of trial;

27

28

PASICH

## ON THE SIXTH AND SEVENTH CAUSES OF ACTION

9.    For the reformation of the Policy to the extent necessary to reflect the true intent of the parties that Policy's expiration date could be extended "as needed";

## ON THE EIGHTH CAUSE OF ACTION

10.    For a declaration in accord with Hoosegow's contentions;

## ON ALL CAUSES OF ACTION

11.    For costs of suit incurred herein; and

12.    For such other, further, and/or different relief as may be just and proper.

Dated:  September 9, 2020            PASICH LLP


By:    /s/ *Jacquelyn M. Mohr*
Kirk A. Pasich
Jacquelyn M. Mohr
Attorneys for Plaintiff

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in this action.

Dated:  September 9, 2020                PASICH LLP


By:  /s/ *Jacquelyn M. Mohr*
     Kirk A. Pasich
     Jacquelyn M. Mohr
     Attorneys for Plaintiff

COMPLAINT